## ROBINSON v DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES
### Case No. 85-1408
State of Florida, Division of Administrative Hearings
September 10, 1985

## APPEARANCES OF COUNSEL

**William D. Barrow** for petitioner.

**Linda K. Harris,** District Legal Counsel, for respondent.

**John O. Stapleton** for intervenor.

## OPINION

ARNOLD H. POLLOCK, Hearing Officer.

Consistent with the Notice of Hearing furnished to all parties in this case by the undersigned on June 7, 1985, a hearing was held before Arnold H. Pollock, a Hearing Officer with the Division of Administrative Hearings, in Crestview, Florida, on August 6, 1985. The issue for consideration was whether Petitioner should be granted more than a 3-month provisional license as a foster parent.

### BACKGROUND INFORMATION

On June 14, 1985, the Petitioner, Lydia Robinson, filed an application for a license as a foster parent to be issued by Respondent, Department of Health and Rehabilitative Services (DHRS). Thereafter, on March 12, 1985, Respondent issued a notice to grant a license to the Petitioner for one year and on the same date, forwarded a letter of welcome signed by the District Administrator to the Petitioner. A certificate of license was also forwarded along with an identification card made out in Petitioner's name. Thereafter, on March 19, 1985, based on what appears to have been a clerical error, the District Administrator advised Ms. Robinson that the license originally granted for one year had been granted in error and that a three-month provisional license was appropriate.. This provisional license and the related identification card was forwarded along with the letter admitting the error. Thereafter, on April 12, 1985, Petitioner sent a letter to Respondent indicating her desire to appeal the issuance of the provisional license and on April 25, 1985, the file was forwarded to the Director, Division of Administrative Hearings, for appointment of a Hearing Officer.

At the hearing, Petitioner testified in her own behalf and introduced the testimony of Jimmie Ray Brown, whose two children would be cared for under the license. Respondent presented the testimony of Dorothy S. Turner, program analyst with DHRS' Pensacola District Office and introduced Respondent's Exhibits 1 and 2. Intervenor presented the testimony of Barbara Sue Phillips, the Guardian ad Litem for the two children in question, appointed by the Circuit Court in Okaloosa County, and introduced Intervenor's Exhibit A.

The Respondent and Intervenor have submitted posthearing proposed findings of fact pursuant to Section 120.57(1)(b)4, *Florida Statutes*. A ruling on each proposed finding of fact has been made either directly or indirectly in this Recommended Order, except where such proposed findings of fact have been rejected as subordinate,

cumulative, immaterial or unnecessary. Petitioners failed to file any argument or proposed findings of fact though he was advised of his right to do so.

## FINDINGS OF FACT

Jimmie Ray Brown is, by occupation, normally a merchant seaman. However, pending a resolution of the situation forming the basis for this hearing, he is currently working ashore.

Mr. Brown has custody and control, by court order, of two children, Linda Marie (Age 8) and James Henry (Age 5) Martin. Mr. Brown has filed for adoption of both children. A home study has been done and the natural mother of the children, who is presently in the penitentiary, has consented to the adoption. In Mr. Brown's opinion, only the home study report is holding up consummation of the adoption. No evidence to contradict this was submitted either by DHRS or the Guardian ad litem (GAL), but so far, the petition has not been granted.

Mr. Brown knows the Petitioner and requested her to live in his trailer home, located in Okaloosa County, to care for the two minor children while he is at sea. In order to do this properly, Petitioner, on January 14, 1985, applied for a license to run a foster care home. At that time, she was not living in Brown's home but, instead, was living with her sister-in-law in the house on the lot in front of Mr. Brown's trailer.

When Petitioner filed her application for license as a foster part, under the rules and regulations of DHRS, various investigative steps were taken including, among other things:

(1) a sexual abuse check,

(2) a foster home study, and

(3) a law enforcement registry records check.

The abuse registry check, completed on January 31, 1985, indicated no record of abuse, neglect or exploitation was on file in the Florida Abuse Registry involving Ms. Robinson.

The foster home inspection report from a sanitation standpoint was determined to be satisfactory on January 11, 1985; the physician's report on Petitioner, done on January 17, 1985, reflected that she was free from communicable diseases and in good physical condition; her references were acceptable; and the home study report, entered by Mr. Thomas Goodwin on March 4, 1985, recommended that Petitioner be licensed as a foster parent by the State of Florida to care for James and Linda Martin in the trailer home furnished by Mr. Brown.

203

All of this information was evaluated upon submission by Dorothy S. Turner, a program analyst in the program office of Respondent's Pensacola office. Her job includes the review of and recommendation on applications for licensing of foster homes in that district. Based on the information submitted with Petitioner's application, Mrs. Turner concluded that Petitioner would be acting as a foster parent in Brown's home for two children, at least one of whom was not related to Mr. Brown. Based on this information, and because she did not have sufficient knowledge of Mr. Brown's status and living arrangements, applying the standards for foster home in DHRS Rule 10M-6.05, Mrs. Turner decided to grant a provisional license for a three-month period. Also, according to the information she had, there was no current proper petition for adoption pending at that time.

Even though Mrs. Turner approved a three-month provisional license, her secretary prepared all the paperwork relative to the issuance of a standard one year license (non-provisional) and so notified the Petitioner. The file was forwarded to the District Supervisor without again being reviewed by Mrs. Turner, and the non-provisional license was issued along with all the collateral documentation. Once the non-provisional license had gone out, however, Mrs. Turner saw the completed work and was upset by the fact that the wrong license had been issued. At no time was it her intention to issue other than a three-month license. Approximately one week after the issuance of the original license, corrective action was taken and Petitioner was issued a three-month provisional license.

Petitioner appealed this decision and the matter was referred to the Division of Administrative Hearings for resolution. However, prior to the DOAH hearing, a hearing was held in Circuit Court on April 30, 1985, at which, for reasons not put in evidence at this hearing, the Judge issued an order which, *inter alia*, directed that the children have no contact with the Petitioner and that she vacate Mr. Brown's home. Based on this order, Mrs. Turner did nothing further regarding Petitioner's license. She could have and she should have requested Petitioner return the provisional license on the basis of the court's order but did not do so. Petitioner has not made application for a new license subsequent to that time.

The evidence indicates that at the time in question between January, 1985 and the time of the April 30 hearing, Petitioner was not living in Mr. Brown's trailer but, as was stated previously, in her sister-in-law's home in front of the trailer. The trailer was occupied by Mr. Brown and the two children. Petitioner would visit there and take care of the children when Mr. Brown was not present, and, during the Easter

vacation in April, 1985, when the children were out of school, she did, in fact, for the one week period, live in the trailer with Mr. Brown and the children. Since a license can be issued only to a person living in the foster home, Mrs. Turner assumed that was where Petitioner was living, though this was not so.

Based on the information available on the application form, and applying the standards set for evaluation of foster homes, Mrs. Turner could not have approved a one year license because Mr. Brown was living in the home with Linda Martin. Though he had filed a petition for her adoption the petition required amendment and was not, therefore, an "in process" petitioner. Because Mrs. Turner wanted additional clarification of Mr. Brown's status, she granted the three-month license.

According to Mrs. Turner, her interpretation of the rule in question indicates that a non-resident can reside in the foster home only for 90 days. Since Mr. Brown was not a relative to Linda Martin, he therefore was required to vacate the property within 90 days or have a proper petition for adoption in process. In short, according to Mrs. Turner, all these questions regarding Mr. Brown's status appeared unanswered and Mr. Brown made no effort to explain or provide answers. It is clear that no one from DHRS asked him any questions either. Nonetheless, as a result of the lack of answers, Mrs. Turner was using the 90 days provisional license period to provide time for the unanswered questions to be resolved.

The decision was based entirely on the information contained in the application submitted by Ms. Robinson and by Mrs. Turner's or her subordinates' observations of the situation. Very little effort appears to have been made to clarify Mr. Brown's status or, for that matter, that of Ms. Robinson. No questions were asked of anyone whether Mr. Brown was going back to sea, and if so, when, and no attempt was made to verify whether or not Ms. Robinson was living in the house. Assumptions were made and decisions based on those assumptions which, unfortunately, were not verified or clarified.

According to the GAL, Mrs. Phillips, the adoption of Linda Martin by Mr. Brown has not yet been granted. As GAL, Mrs. Phillips is required to advocate the best interests of the children for whom she works and does investigations, visits with the children and their caretakers, writes reports, and submits recommendations as to what she thinks is the best action to be taken on behalf of the children.

In this case, Mrs. Phillips, who is not employed by or affiliated with DHRS, talked with Mr. Brown and Petitioner on several occasions.

**205**

One subject for discussion was the living arrangements of Brown and Petitioner. At the time of the first inquiry, Petitioner was living with her sister-in-law whose name as was stated previously, was located in front of Mr. Brown's trailer. In April of 1985, Petitioner told Mrs. Phillips she was living in Mr. Brown's trailer because it was convenient for taking care of the children. This is not inconsistent with Mr. Robinson's testimony that during the Spring vacation in April, 1985, for the one week period, she did live there but that at all other times, she did not live in Mr. Brown's trailer. Mrs. Phillips was familiar with Mr. Brown's seagoing activity. In their discussions, Mr. Brown indicated to her that he would be away four to six months out of the year. The remaining time, he said, he would live in the home with the children and when he was living there, Petitioner would move out. The four to six months of absence would not all be contiguous but might be split up over several trips.

In the two reports submitted to the court as Guardian ad Litem on this case, Mrs. Phillips failed to address Petitioner's suitability as caretaker for these two children and no evidence was brought out at the hearing what her current opinion was. She did not indicate approval, but more significantly, neither did she indicate disapproval. As the advocate for the minor children, it seems only reasonable that if she did not approve of Petitioner, she would have said so since the best interests of the children were at stake.

After Petitioner was ordered out of the Brown trailer in April, 1985, Mr. Brown made arrangements for another individual to care for the children. This individual has applied for a foster care license based on her status with the children.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties and the subject matter of these proceedings.

Respondent denied Ms. Robinson a year license as a foster parent on the basis that Mr. Brown, who was not related to either Ms. Robinson or the little girl who was to be one of the children cared for, would also be living at the place where the foster parent duties were to be performed. Added to this fact is that at the time, there was no valid adoption proceeding pending before the court.

A license was required by Ms. Robinson under the provisions of Section 409.175, *Florida Statutes*, which provides that any private residence where care is provided, on a 24-hour basis, to children

206

unattended by a parent or legal guardian, may not remain unlicensed for more than 90 days. If an applicant is ineligible for licensure at the time of application for one reason or another, but, it is anticipated, will be able to meet the licensure requirements within the time period, a provisional license may be issued regardless of ineligibility at that time.

Under the statute, both the home and the individual applicant must be considered, the thrust and main consideration of the statute being the protection of the health, safety and well-being of the child. All factors must be considered.

Here, the evidence showed that Mr. Brown was living permanently in the home with the two children. During the school year, when they were off at school for the major part of the day, the three of them lived there alone, with Ms. Robinson living elsewhere on the property. However, and admittedly, during periods of extended vacation, when the children were not off at school for much of the day and required supervision at home, she moved into Mr. Brown's home and lived there, night and day.

It is this arrangement which, it is clear, Respondent considers objectionable as well as the likelihood that even when he goes to sea as he indicates he will do when the proper arrangements are made, he will be returning for extended stays from time to time.

Consequently, since as of the time of the hearing, there was no order of adoption issued by the court granting Mr. Brown's petition to adopt the children and since, until that is done and Mr. Brown goes to sea, he, the children and Ms. Robinson would be living in his house, the terms of the statute prohibits the issuance of a permanent license to Petitioner. The 90 days provisional license was the appropriate license for Respondent to issue under the circumstances and it is clear that the one year license previously issued and rescinded, was issued by mistake. Its withdrawal was a recision of an improper act, not the revocation of a proper one.

## RECOMMENDATION

Based on the foregoing Findings of Fact and Conclusions of Law, it is, therefore:

RECOMMENDED that Respondent, Department of Health and Rehabilitative Services, deny Petitioner, Lydia Robinson, the one year foster care license.

RECOMMENDED in Tallahassee, Florida, this 10th day of September, 1985.